UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **JOANNE WARWICK**, Plaintiff, vs. **CITY OF DETROIT, et al.**, Defendants. | 2:23-CV-11779-TGB-DRG <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (ECF NO. 1)** |

This matter is before the Court on Plaintiff Joanne Warwick's motion for a temporary restraining order ("TRO") against the City of Detroit and 30 individual defendants. For the reasons detailed below, Plaintiff's motion for a TRO is **DENIED**.

## I. BACKGROUND

Plaintiff Joanne Warwick[1] is a resident of Detroit's "North End" neighborhood. Compl., ECF No. 1, PageID.2. Her discursive, 75-page complaint covers a number of areas in narrative fashion. The central theme of Warwick's complaint is her opposition to the development practices of the City of Detroit and the Detroit Land Bank Authority.

---

[1] Plaintiff Warwick is proceeding pro se. However, Warwick is an attorney, so her pleading is "not entitled to the liberal construction generally afforded to the pleadings of pro se plaintiffs." *Ponte v. Chase Bank USA, N.A.*, Case No. 12-13901, 2013 WL 5818560, at *4 (E.D. Mich. Oct. 29, 2013).

1

Warwick describes being mistreated by the Detroit police and security guards employed by the City. She alleges two assaults in approximately 2017. *Id.* at PageID.23-29. Those incidents resulted in lawsuits filed in the Eastern District of Michigan. *See Warwick v. City of Detroit, et al.*, Case No. 19-12429; *Warwick v. Flake*, Case No. 19-13052. Warwick also says that she was assaulted and falsely arrested at the Coleman A. Young Municipal Center in July, 2019 after a dispute with a security guard. ECF No. 1, PageID.29-32. Warwick also sued the City and a number of individual defendants regarding that alleged assault and false arrest. *See Warwick v. City of Detroit, et al.*, Case No. 22-11707.

But in this lawsuit, Plaintiff focuses on her opposition to the "North End Landing" project, a proposed 180-unit housing development planned to be built in the North End neighborhood. ECF No. 1, PageID.2. According to the Complaint, some or much of the development is slated to be built on Warwick's block. *Id.* Warwick's main grievance about the NEL project is that it was "planned with a select, unelected group of all black and longer-term North End residents to the exclusion of white and newer residents to the area." *Id.*

She contends that the planning process has deliberately excluded her. She says that the City and its officials have deprived her and others from "full participation in a long-awaited Planning Study of the North End," which has "depriv[ed] them of the opportunity to express their concerns and desires" about the neighborhood. *Id.* at PageID.3-4.

2

Warwick's complaint contains three substantive counts: (1) violation of her First Amendment rights to petition the government for redress of grievances and retaliation for her opposition to the development; (2) violation of the Equal Protection Clause of the United States and Michigan constitutions and Detroit City Charter Declaration of Rights by excluding her from the planning process for the NEL project; (3) a § 1983 claim for race discrimination based on Defendants' purported favoritism towards black residents and black developers and exclusion of Warwick (who is white) from the NEL planning process. Id. at PageID.61-63.

In Count IV, Warwick requests an emergency TRO enjoining the Detroit City Council from voting at today's meeting on certain agenda items that pertain to the NEL development. *Id.* at PageID.64-65.

## II. LEGAL STANDARD

The purpose of a TRO "is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). Before granting a TRO, a court must weigh: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a TRO would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a TRO. *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

3

To demonstrate a strong likelihood of success on the merits, "a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997). Even if the plaintiff falls short of establishing a "strong" likelihood of success, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Id.* But the plaintiff's strength on the merits and irreparable harm must "decidedly outweigh[] any potential harm to the defendant if an injunction is issued," and the court must make "specific findings of irreparable injury to the party seeking the injunction." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982).

## III. DISCUSSION

Federal Rule of Civil Procedure 65(b) governs the issuance of temporary restraining orders. Warwick has not satisfied the requirements of that rule. Warwick was directed to notify the Court in writing when Defendants had been notified of this suit. She has not done so. Additionally, Eastern District of Michigan Local Rule 65.1 provides that a TRO must be made by a separate motion. Local Rule 7.1(i) further explains that "a motion for preliminary injunctive relief must not be combined with a complaint." Warwick has not complied with that rule; her request for injunctive relief is included in her complaint as Count IV.

4

Rule 65 also provides that a TRO may only be issued without notice to the adverse party if "specific facts in an affidavit . . . clearly show that immediate and irreparable injury" will result before the adverse party can be heard. Fed. R. Civ. P. 65(b)(1)(A). And the movant must certify in writing "any efforts made to give notice and the reasons it should not be required." Fed. R. Civ. P. 65(b)(2)(B).

With respect to her efforts to notify Defendants of this suit, Warwick writes only the following in her affidavit: "I will try my best to contact the defendants, but right now I am so stressed and tired, I can barely type." Warwick Aff., ECF No. 2, PageID.82. Warwick does not explain why notice should not be required. While these reasons alone provide sufficient reason to deny Plaintiff's motion, the Court will nevertheless consider the merits.

"[T]he most important" factor in the TRO analysis is whether or not Warwick has shown that she will suffer irreparable harm. *Lexington-Fayette Urb. Cnty. Gov't v. BellSouth Telecommunications, Inc.*, 14 F. App'x 636, 639 (6th Cir. 2001). Here, Warwick points to the following as examples of irreparable harm that would result if her motion were denied:

1. That the Detroit City Council will vote to approve certain aspects of the NEL project on July 25, 2023, which will lead to:
2. The "inconveniences of the construction of such a large development";

5

3. The loss of green space and trees across the street, which might negatively affect air quality;

4. Increased risk of flooding;

5. A denial of Warwick's ability to "fully participate in the long-awaited North End Planning Study";

6. Increased congestion from new residents and their visitors

7. An increased chance that one of Ms. Warwick's cats may be hit by a car

Warwick Aff., ECF No. 2, PageID.81-82.

None of these potential harms could reasonably be considered an irreparable injury, and further, they do not flow from conduct that Warwick claims to be constitutional violations. First, the harmful consequences Warwick identifies are traceable to the future construction of the NEL project, not the alleged exclusion of Warwick from the planning process, her mistreatment, or the vote itself.

The Complaint provides no logical connection between Warwick's claimed injury and the conduct she seeks to enjoin. For example, it is unclear what Warwick means in alleging that she has not been "fully included in the North End Planning Study," nor does the Complaint explain the source of any legal entitlement Warwick has to participate in that process. And Warwick also fails to explain how any alleged discrimination against her bears on whether or not the NLE project may proceed. Beyond a bare allegation that the vote would "seal the deal" for the

project, Warwick does not explain how the vote she sought to enjoin—which she says pertains to "tax incentives and related tax benefits"—would bear on the project. ECF No. 1, PageID.4.

Second, the project, by Warwick's own allegation, is not scheduled to begin construction until some time in 2024. *Id.* at PageID.46. This suggests that the harm is not "certain and immediate," as required to obtain a TRO. *See Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

Third, the vote Warwick asks the Court to enjoin has already taken place. According to the Eastern District of Michigan's Electronic Case Filing system, Warwick filed her complaint and motion at 10:45 AM on July 25, 2023. The meeting at issue began at 10:00 AM the same day. July 25, 2023 Detroit City Council Meeting Agenda, pg. 9.[2]

According to the agenda for the July 25 City Council meeting at issue, the vote Warwick sought to enjoin was for approval of a site plan submitted by the Detroit Brownfield Redevelopment Authority Board. That plan was presented to the City Council on April 28, 2023, nearly three months ago. *Id.* at pg. 307. A public hearing was held on June 22, 2023. *See* Minutes of June 22, 2023 Planning and Economic Development Standing Committee.[3] Indeed, it appears Ms. Warwick lodged her

---

[2] Available at https://pub detroitmi.escribemeetings.com/FileStream.ashx?DocumentId=114399, [https://perma.cc/TT59-345E].
[3] Available at https://pub-detroitmi.escribemeetings.com/FileStream.ashx?DocumentId=106196 [https://perma.cc/39WR-NGRU].

objection to the NEL at that meeting. *Id.* Despite being aware of the pertinent facts, Warwick did not seek injunctive relief until *after* the meeting she sought to enjoin had already begun. This delay in seeking judicial intervention undermines Warwick's claim of immediate and irreparable harm. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 511 F. App'x 398, 405 (6th Cir. 2013).

For all these reasons, Ms. Warwick has not shown the sort of certain, immediate, and irreparable injury that is required to obtain injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's request for a TRO is **DENIED**. Once Defendants are served, this case shall proceed in the ordinary course.

**IT IS SO ORDERED.**

Dated: July 26, 2023   s/Terrence G. Berg
　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　UNITED STATES DISTRICT JUDGE